# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| OLGA PYRINOVA, an individual, on behalf of herself and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LENNAR CORPORATION, a foreign corporation, and LENNAR HOMES LLC a Florida limited liability company,<br><br>Defendants. | Case No. 9:18-CV-80727 |

## DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS THE ACTION

Defendants Lennar Corporation and Lennar Homes, LLC (collectively, "Lennar") file this Motion to Compel Arbitration and Dismiss the Action under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

## I.      INTRODUCTION

Before Plaintiff Olga Pyrinova ("Plaintiff") filed this lawsuit, she agreed to arbitrate all employment-related claims against Lennar.[1] As an employee of Lennar, Plaintiff received and acknowledged Lennar's Dispute Resolution – Mediation & Arbitration Policy ("ADR Policy"). In doing so, Plaintiff agreed to arbitrate all disputes arising from her employment with Lennar on an individual—*i.e.* noncollective—basis. Ignoring this agreement, Plaintiff filed the instant lawsuit asserting a claim for overtime compensation and a collective action under the Fair Labor Standards Act ("FLSA"). Prior to filing this Motion, Lennar sent to Plaintiff's counsel a copy of the ADR

---

[1] Lennar disputes Plaintiff was employed by all named defendants. However, for this motion, whether all named defendants employed Plaintiff is inconsequential.

Policy along with her acknowledgment and requested she adjudicate her claims in arbitration in accordance with her agreement to do so. Plaintiff has refused to agree to do so.

Lennar now seeks to compel Plaintiff to do what she agreed to do—arbitrate all disputes arising from her employment with Lennar on an individual basis. Both federal and state law strongly favor arbitration to adjudicate claims in accordance with the terms of the underlying agreement. The ADR Policy easily meets all the requirements for enforceability under the Federal Arbitration Act ("FAA") and Florida law. For these reasons and those that follow, Lennar moves the Court to compel Plaintiff's claims to arbitration and dismiss this lawsuit.

## II. FACTUAL BACKGROUND

**A.  Plaintiff Acknowledged Receipt of the ADR Policy and Agreed to Arbitrate all Claims Arising from Her Employment with Lennar on an Individual Basis.**

Lennar maintains a collection of employment policies, referred to as the Associate Reference Guide ("ARG"). *See* Declaration of Dorothy Randle ["Randle Decl."] ¶ 3, attached as Ex. A. The ARG includes the ADR Policy. *Id.* at ¶ 4 & Ex. A-1. On May 20, 2017, Plaintiff submitted an electronic acknowledgment communicating that she read, understood, and agreed to the policies in, the ARG and the terms of, the ADR Policy.[2] *Id.* at ¶ 5 & Ex. A-2.

Under the ADR Policy, Plaintiff and Lennar "agree[d] to waive all rights to a civil court action regarding any disputes within the scope of this policy. This means that only the arbitrator, and not a judge or jury, will decide the dispute." *Id.* at Ex. A-1, p. 17. Plaintiff specifically agreed to arbitrate "all disputes arising from or related to [her] employment with the Company," including but not limited to, "disputes relating to hiring, compensation, benefits, promotion, working

---

[2] Lennar's 2017 ADR Policy was in effect at the time of the acknowledgment and remained in effect throughout the remainder of Plaintiff's employment with Lennar. *Id.* at ¶ 6. In addition, Plaintiff had previously acknowledged with separate "wet" signatures her receipt of the ARG and the 2014 ADR Policy. *Id.* at Ex. A-3 & Ex. A-4.

conditions, termination of employment, breach of contract, discrimination, harassment, retaliation, workers' compensation retaliation, and any common law or statutory claims arising under state or federal law." *Id.* She further agreed to the following:

> Associate and the Company **agree to arbitrate any claims individually** and **further agree there shall be no class actions, collective actions, multi-plaintiff arbitrations, or class arbitrations of any claims** within the scope of this Arbitration Policy. The arbitrator shall not have power to treat any claim as a class, collective, multi-plaintiff, or consolidated claim. **This means that arbitration may only proceed on an individual basis**.

*Id.* at Ex. A-1, p. 18 (emphasis added).

The ADR Policy further states that the dispute resolution procedure detailed therein "is a condition of employment with Lennar" and that "[b]y simply accepting or continuing employment with the Company, Associates acknowledge and agree that proceeding under [the ADR Policy] is the exclusive remedy for all disputes arising from or related to their employment with the Company." *Id.* at Ex. A-1, p. 16, 17. Plaintiff remained employed with Lennar until April 24, 2018.[3]

**B.    Plaintiff Filed in This Court Claims Within the Scope of the ADR Policy.**

On June 6, 2018, Plaintiff filed this lawsuit, asserting a claim for overtime compensation and a collective action under the FLSA. Complaint ¶¶ 19–26 (ECF No. 1). The allegations Plaintiff asserts within her Complaint arise out of and are related to her employment with Lennar. *See id.*

---

[3] Notably, in her May 2017 electronic acknowledgement, Plaintiff communicated she was "aware of . . . a possible violation of the anti-discrimination, anti-harassment, anti-retaliation, or wage and hour policies in the ARG." *Id.* at ¶ 17. The electronic acknowledgment also contained a personalized explanation stating, "I am aware." *Id.* After being asked about the alleged violation, Plaintiff stated she mistakenly selected the affirmative box relating to policy violations and asked that the Company "kindly change [her response] to 'not aware.'" *Id.* at ¶ 18, & Ex. A-6; *see also* Decl. of Jay Young at ¶¶ 3–4 & Ex. B-1. At no point did Plaintiff allege she did not complete the training or ask the Company to change other responses in her training. Exh. A at ¶ 18; Exh. B at ¶ 5. Plaintiff's electronic acknowledgment, along with her statements relating to her training, resolves any possible dispute about whether the acknowledgement was automatically populated by the Company, whether she personally completed the training and, thus, whether she agreed to the terms of the ADR Policy.

Her claims are therefore subject to the ADR Policy and must proceed through arbitration on an individual basis.

## III.   LEGAL ANALYSIS

**A.   Federal and Florida Law Strongly Favor the Arbitration of Plaintiff's Claims.**

In considering motions to compel arbitration, federal courts apply the federal substantive law of arbitrability, which applies to any arbitration agreement within coverage of the Federal Arbitration Act ("FAA"). *See Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1170 (11th Cir. 2011) (quoting *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004)). The ADR Policy here comes within coverage of the FAA because—if for no other reason—the Parties expressly agreed that arbitrations under the ADR Policy "will be governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq." Randle Decl., Ex. A-1, p. 17.

In addition, the ADR Policy comes within coverage of the FAA because Lennar's business affects interstate commerce. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 268 (1995) (recognizing the FAA governs any agreement that affects commerce, including where the company offering the agreement merely participates in interstate commerce activity). Courts have long recognized operating a business that ships products from out of state for use and sale necessarily affects interstate commerce. *See*, *e.g.*, *Katzenbach v. McClung* 379 U.S. 294, 304 (1964) (concluding that a restaurant that serves food that came from out of state was involved in interstate commerce). The entity that employed Plaintiff—Lennar Homes, LLC—is headquartered in Florida and builds homes throughout the United States. Randle Decl., Ex. A, ¶¶ 20, 22. It uses materials, appliances, and components from vendors in constructing homes in states outside of Florida.[4] *Id.*

---

[4] The other named defendant—Lennar Corporation—also builds homes throughout the United States and uses materials, appliances and components from vendors in constructing homes in states outside of Florida. Randle Decl., Ex. A, ¶¶ 1, 20-22.

4

at ¶ 21. Accordingly, there is ample interstate commerce activity present to meet the standards outlined in *Allied-Bruce* and *Katzenbach*, thus placing the ADR Policy within the scope of the FAA.

### 1. *Federal law strongly favors arbitrating Plaintiff's claims.*

The FAA was enacted to reverse longstanding judicial hostility towards arbitration agreements and to place them on the same equal footing as other contracts. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011). The FAA makes private agreements to submit disputes to arbitration valid, enforceable, and irrevocable. *See* 9 U.S.C. § 2. It evinces a liberal public policy in favor of arbitration, mandating courts, upon motion, to order arbitration of any controversy covered by a written arbitration agreement according to its terms. *See* 9 U.S.C. § 4; *Concepcion*, 131 S. Ct. at 1745, 1749; *see also Szilassy v. Ameriprise Fin. Servs., Inc.*, Case No. 07-80559, 2007 WL 9677242, at *1 (S.D. Fla. Aug. 2, 2007) (recognizing the FAA embodies a strong policy favoring enforcement of arbitration agreements). This "strong" federal policy applies generally to arbitration agreements relating to employment disputes. *See Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1315 (11th Cir. 2002) ("[O]ur own precedent, the mandate of the Supreme Court, and the holdings of almost every other circuit" make clear that compulsory arbitration agreements in employment cases are lawful); *see also Mackler v. Fitness Int'l, LLC*, Case No. 16-80150, 2016 WL 7756623, at *2 (S.D. Fla. Apr. 22, 2016) (D. Middlebrooks) (citing *Circuit City v. Adams*, 532 U.S. 105, 119 (2011)). The "principal purpose" of the FAA is to "ensure that private arbitration agreements are enforced according to their terms." *Concepcion*, 131 S. Ct. at 1748; *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018).

### *2. Florida law strongly favors arbitrating Plaintiff's claims.*

Florida law similarly embodies a strong public policy favoring arbitration. *See Sears Authorized Termite & Pest Control, Inc. v. Sullivan*, 816 So. 2d 603, 606 (Fla. 2002) (arbitration agreements are "favored" by Florida courts); *Laizure v. Avante at Leesburg, Inc.*, 44 So. 3d 1254, 1257 (Fla. 5th DCA 2010), approved, 109 So. 3d 752 (Fla. 2013) ("Florida public policy favors arbitration."); *KFC Nat'l Management Co. v. Beauregard*, 739 So. 2d 630, 631 (Fla. 5th DCA 1999) ("Public policy favors arbitration as an efficient means of settling disputes, because it avoids the delays and expenses of litigation."). Much like the FAA, the Florida Arbitration Code ("FAC") makes written agreements to arbitrate valid, irrevocable, and enforceable. *See* Fla. Stat. § 682.02(1). Florida's policy in favor of arbitration has resulted in the general rule that "arbitration clauses are enforceable and favored when the disagreement falls within the scope of the arbitration agreement." *Sears Authorized Termite*, 816 So. 2d at 606.

Here, Plaintiff agreed to arbitrate all claims arising from or related to her employment with Lennar, specifically including claims relating to her compensation and any statutory claims arising under federal law. *See* Randle Decl., Ex. A-1, p. 16. Plaintiff further agreed to arbitrate any claims individually and not as a class action, collective action, multi-plaintiff arbitration, or class arbitration. *Id*. at Ex. A-1, p. 18. Plaintiff's claims for overtime compensation and collective action under the FLSA fall within the scope of the ADR Policy. Therefore, as addressed more fully below, consistent with federal and state policy favoring arbitration, Plaintiff's claims should be compelled to arbitration.

### B. Plaintiff's Claims should be Compelled to Arbitration.

In reviewing motions to compel arbitration, district courts consider three factors: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3)

whether the right to arbitrate was waived. *Mackler*, 2016 WL 7756623, at *2 (citing *Mercury Telco Group, Inc. v. Emprese de Telecommunicaciones de Bogota S.A. E.S.P.*, 670 F. Supp. 2d 1350, 1354 (S.D. Fla. 2009)). "The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Mackler*, 2016 WL 7756623, at *2 (citing *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000)). "[W]hen in doubt, questions of arbitrability should be resolved in favor of arbitration." *Mackler*, 2016 WL 7756623, at *2 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

       *1.*     *The ADR Policy is valid and enforceable under Florida law.*

Federal courts apply ordinary state-law principles of contract formation when considering the validity and enforceability of arbitration agreements. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Am. Express Financial Advisors, Inc. v. Makarewicz*, 122 F. 3d 936, 940 (11th Cir. 1997). In this case, the Court should apply Florida contract law.

Florida law establishes four essential elements to form a valid contract: (1) an offer, (2) an acceptance, (3) consideration, and (4) sufficiently specific terms so the parties involved can ascertain their obligations. *West Constr., Inc. v. Fla Blacktop, Inc*., 88 So. 3d 301, 304 (Fla. 4th DCA 2012). Lennar extended to Plaintiff an offer of employment conditioned upon her accepting the terms of the ADR Policy. *See* Randle Decl., Ex. A-1, p. 16. Plaintiff expressly accepted the terms of the ADR Policy by physically signing the ARG and ADR acknowledgments at the onset of her employment and by electronically acknowledging receipt and agreeing to the terms of the ARG and ADR Policy in May 2017. *See id*. at Exs. A-2 - A-4. Plaintiff also implicitly accepted the terms of the ADR Policy by continuing her employment with Lennar after she received and agreed to abide by the terms of the ADR Policy on multiple occasions. *See* Randle Decl., Ex. A, ¶ 19. Plaintiff unquestionably accepted and agreed to be bound by the terms of the ADR Policy.

The Parties exchanged sufficient consideration to support their agreement. Florida courts acknowledge "[a] promise, no matter how slight, qualifies as consideration if the promisor agrees to do something that he or she is not already obligated to do." *Cintas Corp. No. 2 v. Schwalier*, 901 So. 2d 307, 309 (Fla. 1st DCA 2005). Florida courts also recognize "mutually binding promises to arbitrate provide consideration for one another, and give rise to an enforceable arbitration agreement." *Bhim v. Rent-A-Ctr., Inc*., 655 F. Supp. 2d 1307, 1312 (S.D. Fla. 2009) (citations omitted). Here, the Parties exchanged mutual promises to be bound by the terms of the ADR Policy, as the "policy applies to claims by the Company *and* claims by the Associate" and "*both the Associate and the Company* agree[d] to waive all rights to a civil court action regarding any disputes within the scope of this policy." *See* Randle Decl., Ex. A-1, p. 16, 17 (emphasis added). Even if they had not—which Lennar denies—Plaintiff's continued employment provides sufficient consideration to support the agreement. *Bhim*, 655 F. Supp. 2d at 1313 ("Bhim's continued employment . . . provided further consideration in support of the Arbitration Agreement.").

Finally, the terms of the ADR Policy are sufficiently specific such that Lennar and Plaintiff could ascertain their obligations under the agreement. The terms of the ADR Policy plainly require all disputes arising from or related to Plaintiff's employment to proceed to arbitration on an individual—*i.e*., noncollective—basis. Accordingly, the ADR Policy constitutes a valid and enforceable agreement to arbitrate under Florida law.

### 2. *Plaintiff's claims fall within the scope of the ADR Policy.*

In her Complaint, Plaintiff asserts a claim for overtime compensation and a collective action under the FLSA. Complaint ¶¶ 19–26 (ECF No. 1). Plaintiff's claims fall within the scope of the ADR Policy.

The ADR Policy requires Plaintiff and Lennar to arbitrate all claims arising from or related to Plaintiff's employment with Lennar, specifically including claims relating to her compensation and any statutory claims arising under federal law. *See* Randle Decl., Ex. A-1, p. 16. The ADR Policy confirms the only claims not subject to arbitration are claims filed under "workers' compensation and unemployment insurance statutes [and/or] administrative charges filed under the National Labor Relations Act, Title VII, or other governmental agency charges." *Id*. at Ex. A-1, p. 16. The ADR further requires Plaintiff to arbitrate any claims individually and not as a class action, collective action, multi-plaintiff arbitration, or class arbitration. *Id*. at Ex. A-1, p. 18. Therefore, Plaintiff's claim for overtime compensation and collective action under the FLSA fall squarely within the scope of the ADR Policy.

### *3.     Plaintiff's claims are arbitrable.*

In addressing the issue of arbitrability, courts recognize that the FAA requirement that arbitration agreements be enforced according to their terms *may* be overridden by a "contrary congressional command." *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). In undertaking this inquiry, however, "it should be kept in mind that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). The burden is on the party opposing arbitration—*i.e.*, Plaintiff here—to show Congress intended to render a claim nonarbitrable. *Id.* at 26. Plaintiff is unable to carry her burden.

It is well-settled that arbitration agreements concerning employment matters are arbitrable. *See*, *e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001) (stating that "there are real benefits to arbitration in the employment context" and reiterating that the Supreme Court has "been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear

when transferred to the employment context."); *see also Gilmer*, 500 U.S. at 26. In *Gilmer*, the Supreme Court held that statutory employment claims could be subjected to arbitration agreements and compelled to arbitration. 500 U.S. at 26–33. According to the Court:

> [B]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial forum. . . . [B]y agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.

*Id*. at 26, 31.

The Eleventh Circuit has consistently affirmed district court decisions granting motions to compel arbitration where employees, like Plaintiff, improperly filed FLSA claims against their employers. *See Matthews v. Ultimate Sports Bar, LLC*, 621 F. Appx. 569, 571 (11th Cir. 2015) (citing *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1364 (11th Cir. 2005)); *see Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1334 (11th Cir. 2014) ("After examining the FLSA's text, legislative history, purposes, and . . . Supreme Court decisions, we discern no 'contrary congressional command' that precludes the enforcement of plaintiffs' Arbitration Agreements.").

Moreover, the U.S. Supreme Court recently approved of a class waiver provision resulting in FLSA collective-action plaintiffs being compelled to arbitrate their claims on an individual basis. *See generally Epic Sys. Corp.*, 138 S. Ct. 1612. In *Epic Systems*, the employees of the company objected to their arbitration agreements "precisely because they require[d] individualized arbitration proceedings instead of class or collective ones." *Id.* at 1622.  The Court noted that by attacking (only) the individualized nature of the arbitration proceedings, the employees' sought to interfere with one of the fundamental attributes of arbitration—the prohibition against "reshap[ing] traditional individualized arbitration by mandating classwide arbitration procedures without the

parties' consent." *Id.* Accordingly, the Court found the class waiver provision in the plaintiffs' arbitration agreements enforceable and the underlying claims arbitrable. *Id.* (there is "a congressional command requiring us to enforce, not override, the terms of the arbitration agreements").

*Epic Systems* confirms the class waiver provision here is enforceable and does not otherwise render Plaintiff's claims under the FLSA nonarbitrable. *See also Walthour*, 745 F.3d at 1334 (affirming decision that approved of class waiver provision and compelled to arbitration the plaintiffs' FLSA collective action). Plaintiff has not and cannot provide any support for the position that Congress has rendered or otherwise intended to render her claims nonarbitrable.

### 4. *Lennar has not waived the right to arbitrate.*

Lennar has not waived its right to arbitrate Plaintiff's claims. "All questions about waivers of arbitration should be construed in favor of arbitration rather than against it." *Doctors Assocs., Inc. v. Thomas*, 898 So.2d 159, 162 (Fla. 4th DCA 2005); *see also Regency Group, Inc. v. McDaniels*, 647 So.2d 192, 193 (Fla. 1st DCA 1994). Lennar has moved to compel arbitration immediately after receiving service of Plaintiff's Complaint and in lieu of filing an answer to the Complaint. Therefore, Lennar has not taken any action that would waive its right to arbitrate Plaintiff's claims.[5] Therefore, consistent with strong federal and state policy favoring arbitration, Plaintiff's claims should be compelled to arbitration.

### C. The Court should Dismiss this Action under Federal Rule of Civil Procedure 12(B)(1) and/or 12(B)(6).

The only avenue by which Plaintiff may pursue her claims is through the requirements in the ADR Policy. Under these circumstances, this Court—along with other courts in this District—

---

[5] The ADR Policy requires mediation as a condition precedent to arbitration. *See* Randle Decl., Ex. A-1, p. 16. Nothing in this Motion should be interpreted in any manner inconsistent with the parties' mutual obligation to attend mediation prior to submitting this dispute to arbitration as detailed in the ADR Policy.

11

has exercised its discretion to dismiss an improperly filed action with prejudice. *See Mackler*, 2016 WL 7756623, at *5, n. 2 (citations omitted) ("Dismissal of a case in which arbitration has been compelled is appropriate . . . when all the issues raised in ... court must be submitted to arbitration."); *Olsher Metals Corp. v. Olsher*, No. 01–3212–CIV, 2003 WL 25600635 (S.D. Fla. March 26, 2003); *see also Perera v. H & R Block E. Enters., Inc.*, 914 F. Supp. 2d 1284, 1290 (S.D. Fla. 2012) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.").

There are two procedural bases for dismissing this action. The first basis is found in Federal Rule of Civil Procedure 12(b)(1). Rule 12(b)(1) is a "flexible rule that 'often serves as a vehicle for raising various residual defenses.'" *Filimex, L.L.C., v. Novoa Invs., L.L.C.*, 2006 U.S. Dist. LEXIS 56039, at *6 (D. Az. July 17, 2006) (internal citation omitted). Dismissal under Rule 12(b)(1) is appropriate when addressing motions to compel arbitration under the FAA. *Schriever v. Navient Sols., Inc.*, Case No. 2:14-CV-596-FTM-38CM, 2014 WL 7273915, at *2 (M.D. Fla. Dec. 19, 2014) (motions to compel arbitration are generally treated as motions to dismiss under Federal Rule 12(b)(1)); *Wash v. Mac Acquisition of Delaware, LLC*, Case No. 6:14-CV-1424-ORL-40TBS, 2014 WL 5173504, at *3 (M.D. Fla. Oct. 14, 2014) (court found arbitration applicable and granted motion to dismiss under 12(b)(1)).

The second procedural basis for dismissing Plaintiff's claims is Federal Rule of Civil Procedure 12(b)(6). When all claims made in the litigation are subject to arbitration, courts may dismiss the action in its entirety for "failure to state a claim." *See La Torre v. BFS Retail & Commercial Operations, LLC*, Case No. 08-22046, 2008 WL 5156301, at *2 (S.D. Fla. Dec. 8, 2008) (court found arbitration appropriate and granted motion to dismiss under Rule 12(b)(6)); *see Perera*, 914 F. Supp. 2d at 1290 (same).

Because all issues raised must be compelled to arbitration, the Court should dismiss Plaintiff's claims with prejudice under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## IV.  CONCLUSION

For the foregoing reasons, Lennar's Motion to Compel Arbitration and Dismiss the Action should be granted, and Plaintiff's Complaint should be dismissed with prejudice.

**CERTIFICATE OF COMPLIANCE WITH S.D. FLA. L.R. 7.1(a)(3)**

Undersigned counsel for Defendants certifies that she has conferred with Plaintiff's counsel in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

Respectfully submitted,

/s/ Jennifer S. Bullock
Jennifer S. Bullock
Florida Bar No.: 0866881
   jennifer.bullock@morganlewis.com
Anaili Cure
Florida Bar No.: 119558
   anaili.cure@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
200 South Biscayne Boulevard, Suite 5300
Miami, FL 33131
(305) 415-3000
(305) 415-3001


Ted D. Meyer
SBOT: 13997500
OGLETREE, DEAKINS, NASH, SMOAK
   & STEWART, P.C.
500 Dallas #3000
Houston, Texas 77002
713.655.5779 (telephone)
713.655.0855 (fax)
ted.meyer@ogletree.com

**Attorneys for Defendants**

## CERTIFICATE OF SERVICE

        I HEREBY CERTIFY that on July 16, 2018, a copy of the foregoing was served on all counsel of record identified on the Service List below via CM/ECF.

        /s/Jennifer S. Bullock
        Jennifer S. Bullock

## SERVICE LIST

Frank H. Henry
BlueRock Legal, PA
10800 Biscayne Boulevard, Suite 410
Miami, Florida 33161
fhenry@bluerocklegal.com
Telephone:
Facsimile:

*Counsel for Plaintiff*

DB1/ 98564912.1